# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| ROGER D. WALDNER, | |
| Plaintiff, | No. C04-1014 |
| vs. | **ORDER** |
| JANET WISSEL CARR; et al., | |
| Defendants. | |

This matter comes before the court pursuant to the March 14, 2005 motion for pretrial conference (docket number 56) and the April 11, 2005 motion to dismiss filed by defendants Van Wyk, Inc., Arlan Van Wyk, David Van Wyk, and Darla Arends (docket number 63). Argument was heard on these motions on May 10, 2005, at which the plaintiff was represented by David Dutton, the Van Wyk defendants were represented by Chip Lowe, defendants Dubuque Bank & Trust Company (as trustee of the Marian Haas Kraus trust), Marian Haas Kraus (as trustee of the Marie C. Haas trust), John C. Kraus, Elizabeth Kraus Tobin, and Patrick Tobin were represented by James Heckmann, and defendants Urban Haas (individually and as trustee of the Marie C. Haas trust) and Patricia Haas (individually and as trustee of the Marie C. Haas trust) were represented by William McCartan.

## Motion for Pretrial Conference

With respect to the motion for pretrial conference, attorney Heckman expressed a desire to conduct discovery in stages in an attempt to control the parties' expenses and forcus their efforts given the complexity of this litigation. Specifically, it was proposed that the first stage of discovery be limited to issues related to plaintiff's declaratory judgment action, i.e., does the written memorandum of understanding dated

1

January 4, 2001 constitute a valid, binding, and enforceable contract upon which a claim for breach of contract can be predicated, and whether or not the stock of H & W Motor Express was properly transferred to the plaintiff or belongs to the defendants. It was also proposed that the defendants' alleged failure to disclose the Central States withdrawal liability issue be subject to the first stage of discovery. Dispositive motions would then be filed and any discovery remaining could be completed on any outstanding issues following the court's ruling. The plaintiff did not object to this proposal.

The motion to conduct discovery in stages is granted. The first stage of discovery, covering the topics as outlined above, shall be completed by August 19, 2005. Dispositive motions shall be filed by September 1, 2005.

## **Van Wyk's Motion to Dismiss**

The Van Wyk defendants contend that the plaintiff's action against them should be dismissed or stayed due to the fact that two pending actions involving the same parties, facts, and circumstances are currently pending in South Dakota state court, and have been pending for over three years. According to the Van Wyks, the pleadings and discovery conducted in the South Dakota action demonstrate that the plaintiff is litigating the same facts and theories he has alleged in this court as affirmative defenses and set-offs in the South Dakota state court actions. The Van Wyks further argue that plaintiff's claim against them is separate and distinct from the claims brought against the other defendants. In support of their position, the Van Wyks rely on the <u>Colorado River</u> doctrine and the first-filed rule. Plaintiff resists the Van Wyk's motion, arguing that neither the <u>Colorado River</u> doctrine, nor the first-filed rule are applicable because the two lawsuits in question are not "parallel," but involve very different subject matter.

### Procedural History

On April 19, 2002, Van Wyk sued the plaintiff in South Dakota state court for contribution on promissory notes Van Wyk alleges that Waldner co-guaranteed. On that same date, the VW Leasing [Van Wyk] sued the plaintiff in a separate action in South Dakota state court to collect on a separate promissory note upon which the plaintiff

2

allegedly defaulted. On June 4, 2002, the plaintiff answered the South Dakota lawsuits, alleging the affirmative defenses of: failure of consideration; unclean hands, estoppel, statute of frauds, waiver, failure of condition precedent; fraud in the inducement.

On September 6, 2002, the plaintiff provided the following responses to Van Wyk's written discovery requests in the South Dakota state court actions:

> <u>No. 11</u>: The Defendant [Waldner] states on information and belief that the Plaintiff has received consideration towards the alleged debt and has failed to credit the same towards the alleged debt.
>
> <u>No. 12</u>: It will be the Defendant's position that the owners of the Plaintiff failed to provide agreed upon consideration for the purchase of certain affiliated businesses.
>
> <u>No. 13</u>: Separate and apart from the alleged contract, owners of the Plaintiff requested the Defendant to attempt to purchase and consolidate a number of companies. In reliance upon this the Plaintiff took these steps and did enter into a number of agreements though he did not sign the guarantee alleged in this complaint. The representation was that the Defendant would be a part owner of a larger company which enabled to the Plaintiff's agents to refrain from personally making certain commitments which, ultimately, the Plaintiff's agents did not honor.
>
> <u>No. 7</u>: The money received by the Defendant was to be used as part of a larger plan to acquire certain business interests and the Defendant did not receive the promised interests because promises made by principles of the Plaintiff failed to honor their obligations.
>
> <u>No. 8</u>: . . . Defendant does contend, however, that the Plaintiff is barred from recovery by its own actions in making representations on which the Defendant relied an not honoring the same.
>
> <u>No. 9</u>: Agents of the Plaintiff advised that the Defendant should acquire an interest in H&W and further that they were going to purchase Duncan Truck Services and, only after the

Defendant had acted to his detriment, reneged on these obligations. The prejudice suffered includes substantial liabilities the Defendant has suffered as a result of his actions in acquiring H&W stock.

<u>No. 11</u>: The Plaintiff failed to honor the obligations it made pursuant to which the Plaintiff's agents purchased Duncan Truck Service, Inc. and the Defendant was to purchase H&W. Any proceeds given the Defendant were for this purpose and not for the Defendant's personal benefit.

<u>No. 12</u>: It will be the Defendant's position that the owners of the Plaintiff failed to provide agreed upon consideration for the purchase of certain affiliated businesses.

<u>No. 13</u>: Separate and apart from the alleged contract owners of the Plaintiff requested the Defendant to attempt to purchase and consolidate a number of companies. In reliance upon this the Plaintiff took these steps and did enter into a number of agreements though he did not sign the guarantee alleged in this complaint. The representation was the Defendant would be a part owner of a larger company which enabled to the Plaintiff's agents to refrain from personally making certain commitments which, ultimately, the Plaintiff's agents did not honor.

On April 9, 2004, the plaintiff filed suit in the United States District Court in the Northern District of Iowa action against all defendants except the Van Wyks. On February 15, 2005, the plaintiff filed a motion to amend his complaint to add Van Wyk as a defendant, alleging in pertinent part in their motion to amend:

4. Van Wyk entered into an oral agreement with the Plaintiff to finance the acquisition of several trucking companies, including H&W Motor Express Company. According to the agreement, Van Wyk was to contribute $3 million to finance the acquisitions and in exchange was to receive 42.5% of the new company which would hold stock in the acquired companies.

5. Pursuant to the agreement with Plaintiff, Van Wyk contributed $801,250.61 for the purchase of H&W Motor Express. Subsequently, Van Wyk withdrew the funds and

4

refused to contribute any more funds to acquire the trucking companies. The Van Wyks' breach of contract with Roger Waldner, in conjunction with the actions fo the current Defendants, caused Roger Waldner's damages.

6. Plaintiff's proposed Amendment arises out of the same facts and circumstances as the Plaintiff's claims against the current Defendants.

On March 9, 2005 the court granted the plaintiff's motion to amend and he filed his second amended complaint and jury demand, alleging a breach of contract claim against Van Wyk. Substantively, the plaintiff alleged:

5. In the latter part of the year 2000, Roger Waldner developed a business plan to acquire several trucking companies and to merge them into one union trucking company to haul freight for other union carriers. The plan was to take advantage of a provision in the Teamsters contract that gave preference to union carriers over non-union carriers. H&W Motor Express Company was one of the companies to be acquired under the business plan.

6. Van Wyk entered into an oral agreement with Roger Waldner to finance the acquisition of the trucking companies pursuant to Waldner's business plan. Van Wyk agreed to contribute $3 million to finance these acquisitions and in exchange, Van Wyk was to receive 42.5% of a new company which would hold stock in the acquired companies.

7. Pursuant to the agreement with Waldner, Van Wyk organized a corporation known as Equity Holdings, Inc. This corporation was established as a holding company to hold the stock of the acquired trucking companies, including H&W Motor Express.

8. Pursuant to the agreement with Waldner, Van Wyk contributed $801,250.61 for the purchase of H&W Motor Express. Subsequently, Van Wyk withdrew the funds and refused to contribute any more funds to acquire the trucking companies.

5

> 9. Van Wyk breached the contract with Roger Waldner by refusing to provide financing as required by the contract.

## The Colorado River Doctrine

Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817) (1976) (citing McCellen v. Carland, 217 U.S. 268, 282 (1910)). "Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" Federated Rural Elec Ins. Corp. v. Arkansas Elec. Coop., 48 F.3d 294, 297 (8th Cir. 1995) (quoting Colorado River, 424 U.S. at 817). Neither a pending state court action involving the same subject matter, nor a potential for conflict obviates this obligation. Id. Rather, the abdication of a federal court's obligation to decide cases can only occur in the "exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." Colorado River, 414 U.S. at 813. In determining whether "exceptional circumstances" exist supporting abstention, several factors are relevant:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority -- not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Federated Rural Elec. Ins. Corp., 48 F.3d at 297 (citing United States Fidelity & Guar. Co. v. Murphy Oil, 21 F.3d 259, 263 (8th Cir. 1994)). "These factors are not intended to be exhaustive, nor are they to be mechanically applied. Rather, they are to be pragmatically applied in order to advance the 'clear federal policy' of avoiding piecemeal

adjudication." Id. (citing Moses H. Cone Memorial Hosp. v. Mercury Constr., 460 U.S. 1, 16 (1983)).

In weighing the applicable factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16. The goal is not to "find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Id. at 25-26; Colorado River, 800 U.S. at 819 ("Only the clearest of justifications will warrant dismissal."); Dominium Austin Partners, L.L.C. v. M.J. Emerson, 248 F.3d 720, 727 (8th Cir. 2001) ("The balance of these factors should be weighted heavily in favor of deciding the case.").

Prior to determining whether there exists "exceptional circumstances" to support abstention, the court must first decide if the concurrent proceedings are "parallel." See In re Burns & Wilcox, Ltd., 54 F.3d 475, 477 (8th Cir. 1995) ("A parallel state court proceeding is a necessary prerequisite to use of the Colorado River factors."). In light of the absence of Eighth Circuit precedent defining a "parallel state court proceeding" in this context, the courts of this district have looked elsewhere for guidance. See Central States Indus. Supply, Inc. v. McCullough, 218 F. Supp. 2d 1073 (N.D. Iowa 2002). The "parallel" proceedings inquiry first "looks at the two proceedings as they currently exist, not as they could be modified to mirror each other." Id. at 1086 (citing Baskin v. Bath Township Bd. of Zoning Appeals, 15 F.3d 569, 572 (6th Cir. 1994)). And even if arising out of the "same basic facts," the parallelism inquiry also addresses whether one of the actions, as it currently exists, "complete relief," i.e., if the state court could not afford some of the relief available in the federal forum, the federal court should abstain. Id. The Sixth Circuit Court of Appeals, in Baskin, defined "parallel" in terms of "identity" of parties and issues. Id. (citing Baskin, 15 F.3d at 571-72). On the other hand, the Fourth Circuit, Tenth Circuit, Seventh Circuit, and Second Circuit have defined "parallel" to require that the two actions involve "'substantially the same parties' litigating 'substantially

7

the same issues."' Id. (citations omitted). The mere commonality of subject matter does not suffice. Id. (citing Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998).

The South Dakota actions and the federal lawsuit clearly involve many of the same issues and the same parties. However, in the South Dakota actions, while the plaintiff has raised the substance of his federal lawsuit as affirmative defenses to setoff the debt claimed by the Van Wyks, he has not asserted the Van Wyk's alleged breach of contract and resulting damages as a counterclaim. While the plaintiff presumably could have brought his breach of contract counterclaim against the Van Wyks in the South Dakota action, he has not. Thus, the actions are not "parallel" for purposes of the Colorado River doctrine. See Id. ("[T]he Nebraska lawsuit, as it currently exists, will not [provide complete relief] because Central States and CPI do not forge their claims against McCullough in the form of counterclaims or defenses. Thus, the Nebraska lawsuit as it currently exists will not dispose of Central States's and CPI's present claims . . ."); Williams v. Security Nat'l Bank, 314 F. Supp. 2d 886 (N.D. Iowa 2004) ("[T]he court is not persuaded by SNG's argument that the actions at issue here are 'parallel' on the ground that the Remainder Beneficiaries have appeared in the Iowa probate action and could have brought their claims in this proceeding in that one.").

As the South Dakota actions and the federal lawsuit are not "parallel," the Colorado River doctrine is inapplicable. The Van Wyk's motion to stay or dismiss must be denied.

### The First-Filed Rule

"The well-established rule is that in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'" Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir. 1993) (quoting Orthman v. Apple River Campground Inc., 765 F.2d 119, 121 (8th Cir. 1985)). As with the Colorado River doctrine, the existence of "parallel" proceedings is a requirement of the first-filed rule as well. Central States, 218 F. Supp. 2d at 1086-91. Moreover, the Eighth Circuit has held that the first-filed rule applies only to concurrent actions in federal court. See Smart v. Sunshine Potato Flakes, L.L.C., 307 F.3d 684, 687 (8th Cir. 2002) ("But 'first

8

filed' is not a 'rule.'  It is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions should proceed to judgment.") (citations omitted).  Since the actions involved are not parallel, concurrent, federal actions, Van Wyk's motion to dismiss based upon the first-filed rule must also be denied.

Upon the foregoing,

IT IS ORDERED that the motion for pretrial conference (docket number 56), i.e., the motion to conduct discovery in stages is granted as set forth above.  The Van Wyk defendants' motion to stay or dismiss (docket number 63) is denied.

May 24, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT